## Allen Bendekgey v. Martha A. Bendekgey

[576 A.2d 433]

No. 88-552

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed April 13, 1990

194

*Bauer, Gravel & Watson*, Burlington, for Plaintiff-Appellant.

*Priscilla B. Dube*, Burlington, for Defendant-Appellee.

**Dooley, J.** Plaintiff husband appeals from a superior court divorce decree which disposed of the parties' real property in accordance with their pretrial agreement. We affirm.

The parties were married in July, 1983. They had no children together, but defendant had two children, and plaintiff one, from previous marriages. They bought a house in Colchester in September, 1984 for $72,900, with a down payment of $24,000 supplied by plaintiff. After he refinanced the house in 1986 to pay some personal debts, plaintiff's equity in the house was reduced to about $8,000. Under the parties' own arrangements, defendant paid thirty percent of the mortgage, taxes, and insurance, and plaintiff the balance.

The parties separated in January, 1987, at which time they both signed a hand-written agreement, which is the center of the present dispute. The agreement set a value for the house at $85,860, and, after calculating the amount due on that date under the mortgage, established the parties' total net equity at $21,260. The agreement further provided that defendant would keep the house and would pay plaintiff half of the equity amount, plus an additional $2,630, if she sold the house. Between the date of the separation and the divorce hearing, defendant spent $6,000 of her own funds to convert a portion of the residence into a rental property.

The divorce action commenced in June, 1987, and was heard in August, 1988. Plaintiff testified that he appraised the value of

the house at the time of hearing at $135,000. He asked for fifty percent of the total net equity, a total which he estimated to be about $70,000, instead of the $21,260 total net equity figure recited in the 1987 agreement.

On cross-examination of plaintiff, defendant introduced the 1987 agreement without objection. Defendant's counsel asked plaintiff about the valuation figure in the 1987 agreement:

Q: And did you believe at the time that was pretty close to the value of the house?

A: I remember arguing about the value of the house, and I didn't believe that was fair, but I settled for—

Q: Now, you said you were under considerable stress during that time?

A: Yes.

Q: It was a difficult time, is that—

A: Well, it was difficult in a few areas. One of them was being there. We didn't have a place to stay. We finally had a place we couldn't move in, had to stay in a motel. . . .

When plaintiff rested, the court announced that although it would view the evidence most favorably to plaintiff, it had no choice but to enforce the 1987 agreement. The court stated:

There hasn't been any showing that this agreement was obtained by fraud, by duress, by—there's nothing about the agreement that's unconscionable. Therefore I don't, even viewing every word the Plaintiff has uttered as absolute truth, there isn't anything that we can do to this agreement, this contract otherwise. So if that's the only issue in this divorce, then I don't think we need to have any more testimony.

Plaintiff's counsel then asked to recall his client "to perhaps elucidate the Court with respect to the circumstances of signing this contract, alleged contract." The court acknowledged plaintiff's testimony that he was "under pressure" and that it had been "an emotional time," and asked plaintiff's counsel for an offer of proof. Counsel stated:

Well, your Honor, the offer would be Mr. Bendekgey was under severe pressure at the time, his moving out of the premises, the document was tendered to him, that he didn't fully appreciate the import of each term in the proposed document and basically was incompetent to sign it at the time. Upon reflection he thinks that it's unfair.

Counsel indicated that plaintiff did not plan to present expert testimony on the question of his competency, and the court declined to allow any additional testimony. There were no requests for findings, and judgment was entered on the basis of the January 1987 agreement. The present appeal followed.

Plaintiff makes three arguments on appeal: (1) the trial court abused its discretion in distributing the real property based solely on the agreement between the parties; (2) the written agreement was insufficient to effect a distribution of the real property; and (3) the trial court did not make sufficient findings to distribute the real property. We take these arguments in order.

█ The discretion accorded to the trial court to distribute marital property is very broad. The court's decision will stand on appeal unless that discretion is "'erroneously exercised, or was exercised upon unfounded considerations or to an extent clearly unreasonable in light of the evidence.'" *Myott v. Myott*, 149 Vt. 573, 578, 547 A.2d 1336, 1339 (1988) (quoting *Jensen v. Jensen*, 141 Vt. 580, 581–82, 450 A.2d 1155, 1156 (1982)). That discretion is narrowed, however, where the parties have made an agreement to distribute all or part of their property. We have a strong policy in favor of voluntary settlement of marital disputes where appropriate. See *Harris v. Harris*, 149 Vt. 410, 420, 546 A.2d 208, 215 (1988) (contested custody matters); *White v. White*, 141 Vt. 499, 502, 450 A.2d 1108, 1110 (1982) (stipulations offer the "hope that whatever agreement they can reach together will be preferable to that which might be imposed by a court which is a stranger to the marriage").

██ A pretrial agreement to distribute property is a contract, which the court can set aside only for grounds sufficient to set aside a contract. See *Harrigan v. Harrigan*, 135 Vt. 249, 250, 373 A.2d 550, 552 (1977). An agreement distributing marital property is presumed to be fair, formal and binding. It rep-

resents the product of bargaining in which both parties have given up positions, rights or entitlements in order to reach a compromise. Therefore, such agreements will not be lightly set aside. See *Barbour v. Barbour*, 146 Vt. 506, 510, 505 A.2d 1217, 1219 (1986). A party who seeks to overturn a property agreement must show "fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the expectation[s] of the parties, collusion, or duress." *Burr v. Burr*, 148 Vt. 207, 209, 531 A.2d 915, 917 (1987).

Although couched as one argument, plaintiff's first argument actually has two parts: (a) that evidence of a higher value of the property established the unfairness of the agreement and thereby required the court to distribute the property without regard to the agreement; and (b) plaintiff's evidence of stress at the time of the agreement constituted sufficient grounds to set aside the agreement. In analyzing these two claims, we emphasize that the trial court had to consider the statutory factors for property distribution and the updated evidence of value only if it set aside the agreement.

Plaintiff's first claim is similar to that raised in *Blanchard v. Blanchard*, 149 Vt. 534, 546 A.2d 1370 (1988). In *Blanchard*, the parties reached an agreement to dispose of their house. The plaintiff paid the defendant an amount equal to the defendant's "equitable interest" as determined by two appraisals. Some months later, the plaintiff sold the property for over three times the appraised amount and, on this basis, defendant sought to reopen the agreement. This Court affirmed the refusal of the trial court to reopen because defendant failed to show mutual mistake or any other ground to set aside the agreement. *Id.* at 536–37, 546 A.2d at 1372. We concluded that the much greater sales price could not be determinative absent a showing that there was a mistake as to value at the time of the agreement. Since the agreement was based on independent appraisals, no showing of mistake had been made. *Id.* at 536, 546 A.2d at 1372.

The situation here is similar to that in *Blanchard*. The stated value of the parties' residence in the January, 1987 agreement was $85,860. Some nine months later, after defendant modified the residence as a duplex with a rental unit at her

expense, plaintiff's appraiser set the value at $105,000. Plaintiff has neither claimed nor shown that the value in the agreement was erroneous at the time of the agreement. The building's physical improvement and the passage of nearly a year may account for the increase in value. As in *Blanchard,* we see no reason to upset the trial court's conclusion that the agreement was not unfair when made.

■ Plaintiff's related claim is that he should have been allowed to reopen his case to present additional evidence to address the court's tentative decision and that, in any event, the evidence showed he was under such stress when the agreement was made that he should now be able to set it aside. His position finds some support in *Burr v. Burr,* 148 Vt. at 209, 531 A.2d at 917, where we affirmed a trial court's decision to set aside a stipulation because the parties had negotiated it over the better part of a day while under "substantial pressure" from the court to settle. At best, *Burr* teaches that the court might have had the discretion to go further in this case and develop grounds to set aside the agreement. We think, however, that the court acted within its sound discretion in refusing to do so. Plaintiff's testimony showed only that he was under stress at the time of the agreement. As the trial court noted, stress accompanies virtually all marital breakups, and we could not enforce any pre-trial agreements if stress alone prevented their enforcement. Plaintiff did not allege duress, coercion, fraud or unconscionable advantage—the grounds itemized in our cases. This is not a case where one party was represented by counsel and the other was not.

■■ Nor can we find error in the failure of the court to allow the plaintiff to reopen his evidence and present testimony on his mental state at the time of the agreement. V.R.E. 611(a) gives the court control over the mode and order of the interrogation of witnesses and the presentation of evidence. Pursuant to this power, the court can refuse to allow the recall of a witness. See Reporter's Notes to V.R.E. 611; *South Burlington School District v. Calcagni-Frazier-Zajchowski Architects, Inc.,* 138 Vt. 33, 52, 410 A.2d 1359, 1368 (1980); *Isabelle v. Proctor Hospital,* 133 Vt. 200, 203, 333 A.2d 118, 121 (1975). We have

required claims of this nature to be stated with particularity. See *Barbour v. Barbour*, 146 Vt. at 510–11, 505 A.2d at 1220 (record must demonstrate a compelling reason for the court to reject the provisions of a stipulation). Here, plaintiff's offer of proof was vague and general. Plaintiff had already had a full opportunity to contest the agreement in his testimony.

■ ■ Plaintiff's second argument is that the 1987 agreement was ineffective to transfer an interest in the marital realty because it lacked the formalities required for the conveyance of land. See, e.g., 27 V.S.A. § 341. The argument was not presented below and is waived on appeal. See *Lewis v. Lewis*, 149 Vt. 19, 23, 538 A.2d 170, 173 (1987). Even if it had been raised, a stipulation between parties in a divorce action is not intended to be a conveyance of land or a contract for the sale of land, and there is no necessity that it meet the requirements of either. Pretrial stipulations, as plaintiff himself argues earlier, are not necessarily binding on the court, and necessarily contemplate a subsequent court decree as the enforceable embodiment of the parties' intentions.

■ Finally, plaintiff contends that the court made insufficient findings because it failed to make specific findings regarding the relevant criteria set forth in 15 V.S.A. § 751, because there were no findings that the 1987 agreement was reasonable, and because it did not render findings as to the value of any of the parties' assets. As we stated in *McCormick v. McCormick*, 150 Vt. 431, 435, 553 A.2d 1098, 1101 (1988): "The court is required to find those facts that are 'essential to the disposition of the issues properly before the court.'" (quoting *Jacobs v. Jacobs*, 144 Vt. 124, 127, 473 A.2d 1165, 1167 (1984)). See also *Klein v. Klein*, 150 Vt. 466, 472, 555 A.2d 382, 386 (1988) (findings must show what was decided and why). Unless the absence of findings prevents an understanding of the court's decision, as was the case in *McCormick*, we must apply the general rule that "the trial court is not required to make findings of fact and conclusions of law when none are requested." *Viskup v. Viskup*, 149 Vt. 89, 92, 539 A.2d 554, 557 (1987). In the present case, there was no doubt about the basis for the court's conclusions, since it adopted the parties' own

prior agreement. The court stated on the record why it followed the agreement. The remaining questions on which plaintiff desires findings became irrelevant once the court decided to follow the agreement.

*Affirmed.*