## Robin Damone v. Phillip Damone

[782 A.2d 1208]

No. 99-203

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed September 14, 2001

*Melvin D. Fink* of *Fink and Birmingham, P.C.*, Ludlow, for Plaintiff-Appellee.

*William E. Kraham*, Brattleboro, for Defendant-Appellant.

**Skoglund, J.** Defendant Phillip Damone appeals the final decree issued in his divorce proceeding by the Windsor Family Court. Defendant claims the court: (1) abused its discretion and acted inequitably in refusing to enforce the parties' agreement regarding the distribution of the proceeds from a medical malpractice settlement, and in distributing to plaintiff, Robin Damone, proceeds from this settlement which were intended to compensate defendant for his pain and suffering; (2) erred by including proceeds from the settlement when it determined, for purposes of equitable distribution of the marital property, what constituted the marital estate, and made clearly erroneous findings regarding the settlement proceeds; (3) abused its discretion in its determination of the maintenance award to the plaintiff; and (4) erred in admitting and relying upon statements made by a guardian ad litem (GAL) regarding the preferences of the parties' children. We agree with defendant that it was error for the family court to disregard the parties' agreement as to the distribution of the personal injury settlement award and, thus, the court erred in including the personal injury settlement proceeds in the marital estate as property subject to distribution between the parties.[1] As a result of

---

[1] As we agree with defendant that the settlement proceeds should have been distributed in accordance with the parties' agreement, we do not address his claim that the court made erroneous findings regarding the settlement proceeds.

Nor do we address his alternative argument that the court erred in treating the personal injury settlement proceeds as marital property, available for distribution. He

the court's error in its property distribution, its determination of plaintiff's maintenance award must also be remanded for reconsideration. Because defendant did not properly object to the admission of the GAL's statements in the hearing, this claim of error was not properly preserved for review, so we do not address it on appeal. We remand for redistribution of the marital estate and a redetermination of plaintiff's maintenance award.

The parties were married in 1985, while in their late teens, and separated in January 1998. They have two children from the marriage. The marital home was purchased in 1986 for $65,000, and while the parties disagreed on the fair market value of the home at the time of their divorce, the court found the value to be $72,000, with a mortgage balance of $58,000. They acquired a few second-hand cars, and amassed $19,153 in consumer debt.[2] Plaintiff has a retirement account which was valued at $582.41. Defendant's pension plan through his employer was valued at $4,853.55. The remaining components of the marital estate, with one notable exception, were valued at $12,135.96.

The most significant asset considered by the court in evaluating the marital estate was the proceeds from a personal injury action based on medical malpractice suffered by Phillip. The action sought damages for the past, present, and future pain and suffering for Phillip and for loss of consortium suffered by Robin, and attorney's fees. In 1991, a tumor was discovered in Phillip's back. He underwent surgery to remove the tumor, spending two days in the hospital, and was working again two weeks later. In 1992, when he continued to have back problems, he underwent another surgery and three more tumors were removed. After four months of recovery from this surgery, which included six

---

suggests that only those portions of personal injury awards that reimburse expenses paid from marital assets or replace income that would have been earned during the marriage should be considered as marital property. Any portion of a personal injury recovery that does not arise from the loss of a marital asset, he argues, is the separate property of the tort claimant. While not necessary to this decision, we acknowledge the trend in the country to adhere to defendant's suggested approach. The American Law Institute (ALI) endorses this approach as well and recognizes the personal nature of a loss which gives rise to a claim for pain and suffering. See Principles of the Law of Family Dissolution: Analysis and Recommendations § 4.08(2)(a) (ALI, Proposed Final Draft, Part I, February 14, 1997). Accordingly, the ALI would treat this type of property as the separate property of the injured spouse.

[2] The court found that plaintiff had debts totaling $6,400 which she would continue to assume, that defendant had $4,053 in debt he was to assume, and that defendant wanted plaintiff to be responsible for one-half of $8,700 in additional marital debt. The court considered only this latter $8,700 of debt to be marital debt for property distribution purposes.

weeks of five-day-per-week radiation treatment, he returned to work but suffered continued pain in his back. He was again admitted to the hospital to address fluid buildup around the surgical site. On his first day home, he began to feel nauseous and was taken by ambulance back to the hospital, where he underwent a spinal tap. He was diagnosed with a severe staph infection, and underwent another surgery to remove the infection. He was hospitalized for ten days. Upon his return home he spent the next two months self-administering antibiotics intravenously thrice daily to insure the infection did not return. Phillip was told that he might experience permanent back pain caused by the massive tissue, muscle, and nerve loss he had suffered as a result of the surgery. He was left with a fourteen- to sixteen-inch incision site scar, thick cross lines from where surgical staples had been, discoloration from the radiation treatments, and an indentation in his back. The pain he experiences is worse in the winter, and he relies upon a daily prescription of Percocet to manage, but not alleviate, the pain.

In 1995, the Damones filed the personal injury action against the doctors who initially treated Phillip for his back pain. The suit claimed that, as a result of the doctors' negligence, Phillip had suffered both physical and psychological pain, increased disfigurement, permanent disability or increased disability, loss of enjoyment of his life, lost income, and had incurred substantial medical expenses. Robin joined the complaint, alleging in a separate count that as a result of the doctors' negligence she had suffered the loss of care, consort and companionship of Phillip. In June 1998, after the Damones had separated, the case settled. After payment of legal fees, costs and discharge of a medical lien, they received $151,116.11 net from the $250,000 total settlement. Prior to settlement, the Damones negotiated an agreement between themselves — an agreement which was reached only after considerable disagreement between the parties over how much Robin would receive. The agreement provided that should a settlement be reached in the case, after all fees and expenses were paid, Phillip would be entitled to 82½% of the net amount of the settlement, and Robin would be entitled to 17½%. Given the net settlement amount, this agreement would have resulted in a distribution of $123,845.79 to Phillip and $26,270.32 to Robin.

In its distribution of marital property, the court awarded plaintiff her retirement account, valued at $582.41. She also retained an automobile she had purchased after the separation. The court awarded defendant his pension plan, two cars, and the equity in the home, and

assigned him the marital consumer debt he had been making payments against, resulting in an award valued at $11,553.55. The court offset the discrepancy between the parties' awards by its division of the personal injury settlement proceeds, with defendant receiving $90,000 and plaintiff receiving $60,116.11. The total allocation for each party resulted in plaintiff being awarded $60,698.52 worth of marital property, and defendant being awarded property worth $101,553.55.

The court also awarded plaintiff primary legal and physical responsibility for the parties' two children, ages thirteen and eleven at the time of the final order. In determining what award of parental responsibility would be in the best interest of the children, it examined the required factors enumerated in 15 V.S.A. § 665(b). It also heard testimony from the GAL regarding the custodial preferences expressed to her by the children, as well as her own opinion of what custodial arrangement would be in the best interest of the children. The court concluded that the best interests of the children would be served by awarding parental rights and responsibilities to plaintiff, subject to defendant's right to parent-child contact.

In addition, plaintiff sought rehabilitative maintenance of $600 per month for a period of ten years. In determining whether a maintenance award was warranted, the court considered the length of the marriage, the age and physical condition of the parties, the level of education of each party, and the standard of living enjoyed during the marriage. It also examined the income brought into the family by each spouse, the work history of each spouse, and the effect plaintiff's employment will have over the next few years on her role as custodian of the children. The court concluded that plaintiff would require rehabilitative maintenance for a period of five years, while she provides after-school care for the children, and that the need for those duties would diminish over time as she secures appropriate employment which will compensate her at a level that will enable her to meet her reasonable needs.

The court then turned to the issue of how much maintenance defendant would pay plaintiff over this period. It examined the current income generated by each party, noted the stability in defendant's monthly income of approximately $2,862, and forecast that plaintiff's child-care duties would likely result in a decrease in her income, resulting in monthly income for her of approximately $1,591. The court also calculated that after each party used its portion of the settlement proceeds to pay off their respective outstanding debts, the remaining settlement proceeds would be $53,716 for plaintiff and $77,247 for

defendant. The court calculated that, based on its distribution of the settlement proceeds and the rate of interest of 4.5% on a one-year U.S. Treasury Bill (as of March 30, 1999), plaintiff could derive $2,417 annually, or $201 per month, from her net portion of the settlement proceeds, and defendant could derive $3,476, or $290 per month, from his net portion. Adding these monthly imputed interest income figures to the earned income figures above, the court arrived at a total monthly income of $3,152 for defendant and $1,792 for plaintiff. From this, the court determined that the appropriate amount of rehabilitative maintenance needed to be paid by defendant to plaintiff in order to maintain the respective households at the standard of living established during the marriage would be $500 per month.

## I.

We first address defendant's contention that the family court abused its discretion by refusing to honor the parties' agreement on how to distribute the personal injury settlement proceeds. The parties executed an agreement on June 8, 1998, approximately six months after their separation and three months after plaintiff filed the complaint for divorce, which reads as follows:

> In regards to a potential settlement in the case of Damone v. Lord, Docket No.: S269-95 Wrc
>
> Both Phillip and Robin Damone agree that should an agreement for settlement be reached on this date at the scheduled mediation the proceeds shall be divided as follows:
>
> After all legal fees, costs, expenses and $3,000.00 owed to James Damone are paid, Robin Damone shall receive 17½% of the net amount. Phillip Damone shall receive 82½% of the net amount.

While the agreement does not refer to their pending divorce, it does specifically provide for the distribution of the settlement proceeds. The court acknowledged the agreement, if followed, would have resulted in a distribution of $26,270.32 to plaintiff and $123,845.79 to defendant.

The court discussed three possible options for distribution of the net personal injury settlement proceeds. First, it considered dividing the settlement equally between the parties. It rejected this approach as inappropriate in this case since, it acknowledged, the primary purpose of the settlement proceeds was to compensate defendant for his past and future pain and suffering. The court also rejected this approach

because it was "mindful of the parties' written agreement concerning the settlement of the lawsuit."

Second, the court considered honoring the parties' agreement. The court rejected this approach as well, offering two reasons why the agreement was not to control the disposition of the settlement proceeds. One was that the agreement did not specifically state that it would "override all other considerations relevant to an 'equitable division' in the context of the divorce action," and the other was that "the approach of accepting various independent agreements at face value could easily lead to an inequitable result," causing in this case a "grossly disproportionate property division."

The court concluded that neither of the aforementioned options was acceptable, because "[a]lthough it is appropriate to recognize that Phillip deserves compensation for his pain and suffering, it is also appropriate to recognize Robin's contributions to the marriage, and to leave her in a reasonable financial position to provide a home for herself and for the children." Instead, stating that it favored transactional efficiency and avoiding future litigation, the court fashioned the property settlement at issue, disregarding the parties' agreement. The court reiterated that this was intended to be an equitable division of the marital estate which would reflect defendant's continuing pain and suffering, both parties' contributions to the marriage, and, quoting *Naumann v. Kurz*, 152 Vt. 355, 360, 566 A.2d 1342, 1345 (1989), would provide both spouses "with a nest egg for retirement or a reserve for emergencies."

■ "[A] trial court has wide discretion in the disposition of marital property upon divorce, and we will affirm its decision where we find reasonable evidence to support the court's findings and conclusions." *Johnson v. Johnson*, 155 Vt. 36, 43, 580 A.2d 503, 507 (1990). "We will not disturb that disposition unless the court's discretion was abused, withheld or exercised on untenable grounds or to a clearly unreasonable extent." *Milligan v. Milligan*, 158 Vt. 436, 439, 613 A.2d 1281, 1283 (1992) (citations and internal quotations omitted).

■ Whether a court should recognize divorcing parties' independently-arrived-at property settlement agreements is an issue which is not unique to this case. We have repeatedly recognized that parties to a divorce may enter into agreements reflecting their preferred disposition of marital property. See *Tudhope v. Riehle*, 167 Vt. 174, 177, 704 A.2d 765, 767 (1997); *Putnam v. Putnam*, 166 Vt. 108, 113, 689 A.2d 446, 449 (1996); *Kanaan v. Kanaan*, 163 Vt. 402, 413, 659 A.2d 128, 135

(1995); *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990); *White v. White*, 141 Vt. 499, 502, 450 A.2d 1108, 1110 (1982). We have also recognized the deference a court should give to agreements entered into between divorcing parties. "We have a strong policy in favor of voluntary settlement of marital disputes where appropriate." *Bendekgey*, 154 Vt. at 197, 576 A.2d at 435; see also *Lewis v. Lewis*, 149 Vt. 19, 22, 538 A.2d 170, 172 (1987) (when disposing of marital property, "trial court should give great weight to any agreements between the parties"); *Barbour v. Barbour*, 146 Vt. 506, 510, 505 A.2d 1217, 1219 (1986) (agreements regarding stipulations to property division will not be lightly overturned). While a trial court does have very broad discretion in its power to distribute marital property, "[t]hat discretion is narrowed, however, where the parties have made an agreement to distribute all or part of their property." *Bendekgey*, 154 Vt. at 197, 576 A.2d at 435. "A pretrial agreement to distribute property is a contract, which the court can set aside only for grounds sufficient to set aside a contract." *Id.* Such agreements are presumed to be fair, formal, and binding, representing the result of the bargaining process, and therefore will not lightly be set aside. *Id.* at 197-98, 576 A.2d at 435-36. The challenger to a property distribution agreement has the burden of showing "fraud, unconscionable advantage, impossibility of performance, hampering circumstances beyond the expectations of the parties, collusion, or duress." *Id.* at 198, 576 A.2d at 436 (citing *Burr v. Burr*, 148 Vt. 207, 209, 531 A.2d 915, 917 (1987)). Even in the context of determining parental rights and responsibilities, an agreement between the parents will not be lightly overturned by the court. Agreements regarding parental rights and responsibilities are presumptively in the best interests of the child, and such agreements may be disregarded only when the court finds that the agreement is not in the best interests of the child or that it was involuntarily entered into. 15 V.S.A. § 666(c); *Harris v. Harris*, 149 Vt. 410, 420, 546 A.2d 208, 215 (1988).

We have also held that "although the court is not bound by an agreement of the parties relative to custody, it must give notice to the parties of its rejection of an agreement so that they may make a meaningful evidentiary presentation on this issue." *Plante v. Plante*, 148 Vt. 234, 236, 531 A.2d 926, 927 (1987) (internal citation omitted); see also *Harris*, 149 Vt. at 420, 546 A.2d at 215. Similarly, we have on prior occasion ordered stricken from a final divorce order, a maintenance provision which the presiding judge included in the order, contrary to the stipulation of the parties. See *Hopkins v. Hopkins*, 130

Vt. 475, 478-79, 296 A.2d 266, 269 (1972). We ordered the offending provision stricken from the final order because the judge failed to sufficiently indicate he would deviate from the stipulation or what his final order would be if he deviated from the stipulation. *Id.* We now hold that the same notice requirement which applies to a court's deviation from a custody agreement adheres to a court's rejection of property distribution agreements entered into between parties to a divorce.

The importance of this holding is clear in light of the case at bar. At trial, neither party attempted in any way to overturn the agreement. Rather, both parties testified that they wanted the terms of the agreement to control distribution of the settlement proceeds, and the court to enforce that agreement.[3] The court itself acknowledged the existence of the agreement, and, on two occasions during exchanges with counsel on the issue of enforcement of the agreement, stated that it was not going to deviate from the agreement. Nor was there any indication provided by the court that the agreement was somehow defective or otherwise to be regarded as without effect. Yet in its decision it disregarded the agreement, stating that "the parties' agreement did not specify that the contemplated division would necessarily override other considerations relevant to an 'equitable division' of property."

■ Our prior decisions regarding the contractual nature of such agreements have not required that such an explicit specification is necessary for the integrity of the agreement to be given effect by the court. There was no evidence presented challenging the parties' intent for the agreement to have effect, and their desire for the agreement to control was clearly evident from their testimony. Such agreements control the disposition of the property they address, unless a challenger successfully defeats the agreement as outlined above. Since the court failed to adhere to an unchallenged property distribution agreement, and failed to timely notify the parties of its intent to do so, the court's distribution of the settlement proceeds contrary to the parties' agreement was an abuse of discretion. Accordingly, we reverse the court's property distribution and remand for redistribution of the marital estate, with the personal injury settlement proceeds to be

---

[3] While the parties agreed at trial that their agreement should control the distribution of the settlement proceeds for purposes of distributing the marital estate, they did not agree whether the proceeds could be included in the calculation of defendant's ability to pay maintenance to plaintiff.

distributed to the parties consistent with the agreement they both sought to have enforced by the court.

## II.

Defendant also contends that the trial court abused its discretion when it included the proceeds from the medical malpractice settlement in its determination of the award of maintenance to plaintiff. When the court addressed plaintiff's request for maintenance, it examined the financial status of each of the parties, taking into account plaintiff's likely need to reduce her work hours to enable her to care for the children. As noted, it also imputed income to the parties based on interest to be generated from the personal injury settlement proceeds, after the marital and personal debts are discharged. It concluded that plaintiff should be awarded rehabilitative maintenance of $500 per month for five years.

■ "A court has broad discretion in determining the amount and duration of a maintenance award, and we will set it aside only when there is no reasonable basis to support it." *Stickney v. Stickney*, 170 Vt. 547, 548-49, 742 A.2d 1228, 1231 (1999) (mem.) (citing *Chaker v. Chaker*, 155 Vt. 20, 25, 581 A.2d 737, 740 (1990)). This discretion is not without its limits. See *id.* at 549, 742 A.2d at 1231 (citing *Klein v. Klein*, 150 Vt. 466, 473, 555 A.2d 382, 386 (1988)).

■ As the court's distribution of the settlement proceeds was incorrect, so too was its maintenance award, which was calculated based in part on anticipated income generated by the property distribution. See *Semprebon v. Semprebon*, 157 Vt. 209, 216, 596 A.2d 361, 365 (1991) (recognizing interrelationship of maintenance and property awards in final divorce order); 15 V.S.A. § 752(b)(1) (in determining whether to order maintenance, court must consider property apportioned to the party seeking maintenance). Interest income from each party's awarded share of the settlement proceeds was factored into the maintenance calculation. Therefore, the maintenance award of $500 per month must be vacated and, on remand, recalculated to account for the corrected marital property distribution.[4]

---

[4] As the court did not address the property distribution in its determination of the duration of the maintenance payments, its decision to require payments for a period of five years is not affected by our decision.

## III.

Finally, defendant argues that the court committed error when it admitted and relied upon the GAL's testimony regarding the parental preferences of the children.

Rule 7(d) of the Vermont Rules for Family Proceedings provides that a GAL may state a position to the court, but that position must be based on evidence contained in the record. V.R.F.P. 7(d); *Gilbert v. Gilbert*, 163 Vt. 549, 554, 664 A.2d 239, 241 (1995); *Johnson v. Johnson*, 163 Vt. 491, 496, 659 A.2d 1149, 1152 (1995).

At the close of evidence, the court asked the GAL two specific questions: whether the children had a position to state to the court, and what her own view was as to the best interests of the children. The GAL responded that the children had told her they wanted to live with their mother while maintaining liberal contact with their father, and that "I share that view. I feel that based on the evidence presented in the last three days and also based on my conversations with people involved, I feel that [parental rights and responsibilities] should be awarded to the mother." Defendant did not object to the GAL's testimony.

Plaintiff claims that we may not address the error by the trial court in admitting and relying upon the GAL's statements because defendant failed to properly object to the testimony, as required by V.R.E. 103(a)(1). We agree. Rule 103 requires that for error to be predicated upon a ruling admitting evidence, a substantial right of a party must be affected and "a timely objection or motion to strike [must] appear[] [on the] record." V.R.E. 103(a)(1). The court's ruling granting plaintiff primary parental rights and responsibilities for the children clearly affects a substantial right of defendant. *Guardianship of H.L.*, 143 Vt. 62, 65, 460 A.2d 478, 479 (1983) ("Both the right of a parent to custody and the liberty interest of parents and children to relate to one another in the context of the family, free of governmental interference, are basic rights protected by the due process clause of the Fourteenth Amendment to the United States Constitution." (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Rutherford v. Best*, 139 Vt. 56, 60, 421 A.2d 1303, 1306 (1980)). However, plaintiff is correct that defendant did not adhere to the requirement of entering a formal objection, as set forth in Rule 103. Defendant "cannot claim error in admission of evidence unless he made a timely objection or motion to strike during trial. The objection must have been made at the time the evidence was offered or the question was asked . . . ." *State v. Fisher*,

167 Vt. 36, 43, 702 A.2d 41, 45 (1997) (citing V.R.E. 103(a)(1); *Brown v. Pilini*, 128 Vt. 324, 330, 262 A.2d 479, 482 (1970)); *see also Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Therefore, because he failed to object to the testimony when it was proffered to the court, defendant cannot now claim on appeal that admission of the GAL's testimony was error.

*Affirmed in part, reversed in part and remanded for recalculation of the property settlement and maintenance award consistent with the views expressed herein.*