2010 VT 52

## Kara DeLeonardis v. Sarah Page

[998 A.2d 1072]

Nos. 09-068 & 09-150

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed June 4, 2010

*Cynthia L. Broadfoot* of *Broadfoot & Associates*, Burlington, for Plaintiff-Appellee.

*Catherine E. Clark* of *Clark, Werner & Flynn, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** These consolidated cases arise out of a civil union dissolution involving defendant Sarah Page and plaintiff Kara DeLeonardis. Defendant appeals the Chittenden Family Court's property division, maintenance award, parent-child contact order, and child custody award. She also appeals the family court's summary denial of the parties' post-judgment stipulation to amend the court's parent-child contact decision. We vacate the family court's property division and maintenance award and remand for proceedings consistent with this opinion. We affirm the court's parent-child contact and child custody decisions.

¶ 2. Plaintiff and defendant entered into a civil union in 2001 and have two minor children. In 2004, the couple, together with defendant's mother, purchased a duplex in Burlington for $283,000. The couple and defendant's mother agreed that the mother would pay half of the purchase price ($141,500), receive a one-half interest in the property, and live in the ground-floor unit. The couple would pay the remaining half, share a one-half interest in the property, and live on the second floor. At the closing, defendant's mother paid $83,079.36, and plaintiff and defendant executed a promissory note to cover both their share of the purchase price and the remaining $58,420.64 still owed by defendant's mother. Within two years of the closing, defendant's mother paid the couple the balance of her portion of the purchase price. The couple did not apply this payment toward the outstanding mortgage amount, however. The present value of the house is $300,000, and the debt owed on the house is $195,000.

¶ 3. In addition to the house, the parties share limited assets and have a number of outstanding liabilities. Each owns a car of roughly the same value. Defendant owns most of the household furnishings, as well as a retirement account valued at $9850. The parties owe approximately $14,000 in credit card debt used to finance home renovations, as well as $45,000 to defendant's mother. Defendant also has $4500 in credit card debt that she incurred after the separation. Plaintiff holds a master's degree and earns approximately $54,000 a year. Defendant has an annual salary of roughly $38,000.

¶ 4. In 2008, the couple separated. Plaintiff moved out of their residence and rented a nearby apartment. She filed a complaint

for civil dissolution in May 2008, and dissolution was granted in January 2009. In its opinion and order dissolving the civil union, the family court found that defendant has been extremely upset with plaintiff since the separation. It noted that defendant refuses to speak with plaintiff, even about their minor children, and has insisted that she and plaintiff communicate only over e-mail or via a journal. The court also found that defendant refuses to allow the children to bring their belongings to plaintiff's household, thus requiring them to have many duplicate possessions. The court concluded that defendant seems to feel that she is "in competition with the Plaintiff in winning over the children's affection."

¶ 5. The family court further found that although both parents have a strong and loving relationship with their children and could provide for their children's needs, defendant's hostility towards plaintiff negatively affected the children, causing them unnecessary stress. It recited how defendant has intentionally avoided contact with plaintiff, going so far as to hide from her, and that when the two have interacted, defendant has been rude to plaintiff and prone to angry outbursts, and has sworn at her. In addition, the court noted, plaintiff gives in to defendant's demands so as to avoid arguing in front of the children. The court found that, generally, defendant's resentment toward plaintiff prevents her from communicating with plaintiff, even when doing so is in the children's best interest.

¶ 6. The family court concluded that, with respect to parenting, the parties played roughly an equal role in the children's lives. Plaintiff generally cared for the children in the morning while defendant cared for them in the evening. They shared the bedtime rituals as well as the responsibility for bringing the children to appointments. Defendant typically cooked for the family and bought the children's clothes. However, the court concluded that plaintiff was more sensitive to the needs and struggles of the children. The court also found that although plaintiff and defendant both cared for the children and were involved in the children's lives, their parenting styles differed. Plaintiff was more flexible, whereas defendant had a stricter style that was structured and more consistent. The court noted that plaintiff continually felt pressured into defendant's way of parenting.

¶ 7. The family court awarded plaintiff sole legal and physical parental rights over the children because the court found that plaintiff was more sensitive to the children's needs and more likely

to encourage the children's contact with the other parent, and because defendant harbored so much resentment toward plaintiff. The court found that defendant perceives plaintiff "as an adversary, not as a loving, capable parent whose presence in the children's lives is necessary for their continued happiness and welfare." Similarly, due to defendant's animosity, controlling behavior, and lack of communication with plaintiff, the court awarded plaintiff more parent-child contact than defendant.

¶ 8. With respect to the property division, the family court found that plaintiff and defendant had $52,500 equity in the house. The court appears to have reached that conclusion by subtracting the amount of the debt still owed on the house from its present fair market value and then dividing the result by two. The court awarded plaintiff's interest in the house, as well as the concomitant mortgage obligations, to defendant. The court also assigned to defendant the $45,000 debt owed to her mother and allocated to plaintiff the $14,000 home improvement credit card debt. Finally, the court awarded the parties the personal property in their possession, their respective vehicles and accounts, and the credit card debts in their names.

¶ 9. The court denied defendant's claim for spousal maintenance. The court reasoned that defendant was not entitled to maintenance, as she received a "favorable apportionment of the assets," "provided no reason she cannot remain gainfully employed," and could provide for herself at the standard of living the parties had shared.

¶ 10. Defendant appealed the order, arguing that the family court erred in finding that she and plaintiff had $52,500 equity in the house, in allocating only $14,000 of debt to plaintiff — the higher earning spouse — and nearly $240,000 of debt to defendant, and in denying her spousal maintenance. In addition, defendant asserts that the family court abused its discretion in not awarding her fifty percent parent-child contact and in awarding plaintiff sole parental rights, particularly given the court's finding that she has "a strong, loving relationship with the children and can provide for their physical needs, emotional needs, and developmental needs."

¶ 11. After the appeal, in an attempt to settle the matter, the parties filed a stipulation to amend the order. Specifically, the parties stipulated to afford defendant fifty percent parent-child contact. The family court rejected the stipulation, however, writing

only: "The court disagrees with expanded P.C. contact." Defendant appealed from this decision, and the appeals have been consolidated.

¶ 12. We first address the family court's property distribution. As we have often said, "the distribution of property in not an exact science." *Victor v. Victor*, 142 Vt. 126, 130, 453 A.2d 1115, 1117 (1982). Therefore, we afford the family court wide discretion in distributing the marital estate[1] and will uphold the court's distribution unless its "discretion was abused, withheld, or exercised on untenable grounds." *Scott v. Scott*, 155 Vt. 465, 472, 586 A.2d 1140, 1144 (1990). We will affirm the family court's valuation of assets if the court's discretion was exercised within the range of presented evidence. *Kanaan v. Kanaan*, 163 Vt. 402, 407, 659 A.2d 128, 132 (1995).

¶ 13. The criteria governing property division in a divorce are set forth in 15 V.S.A. § 751, and these criteria also apply to civil union dissolutions. *Id.* § 1204(d) ("The law of domestic relations, including . . . property division and maintenance shall apply to parties to a civil union."). First, the court must define the marital estate, which includes "[a]ll property owned by either or both of the parties, however and whenever acquired." *Id.* § 751(a); accord *Golden v. Cooper-Ellis*, 2007 VT 15, ¶¶ 10, 36, 181 Vt. 359, 924 A.2d 19 (noting that court must first determine what assets make up the marital estate and then assign value to each asset). The court must then "equitably divide and assign the property" included in the marital estate. 15 V.S.A. § 751(a). The family court "may consider all relevant factors" in making the division, including "the value of all property interests, liabilities, and needs of each party." *Id.* § 751(b).

¶ 14. We conclude that the family court erred in the first step of its analysis — defining the assets in the marital estate. As mentioned above, the family court correctly found that the house had a fair market value of approximately $300,000 and an outstanding mortgage of roughly $195,000. The parties do not dispute either of these findings. However, the family court further found that the couple had $52,500 in equity in the house on the basis that all of the equity was owned by the couple and none by

---

[1] Although the couple was joined in a civil union, for ease of reference we refer to the property subject to the family court's division as the "marital estate."

defendant's mother. Given the facts in the record, this finding is clearly erroneous.

¶ 15. The fundamental flaw in the family court's equity determination is its application of the outstanding debt on the mortgage against the fair market value of the house, rather than against the value of the couple's interest in the house. See *Burns v. Burns*, 466 N.W.2d 421, 424 n.1 (Minn. Ct. App. 1991) ("[T]he nonmarital interest is subtracted from the market value at dissolution to determine the marital interest; and the marital interest is then reduced by the amount of the mortgage balance."). The couple and defendant's mother are cotenants, each possessing an undivided fifty percent interest in the house.[2] Defendant's mother has fully paid for her interest and, as the family court correctly noted, is not subject to the debt for which the mortgage is security.[3] Plaintiff and defendant, by contrast, have paid for only a small fraction of their interest in the property, and they alone are liable for the outstanding debt secured by the mortgage, a conclusion that plaintiff does not dispute.[4] Yet in determining the couple's equity in the house, the family court deducted the couple's outstanding mortgage debt from the fair market value of the house, rather than from the value of their interest in the house. In so doing, it erroneously incorporated into its analysis property that falls outside of the marital estate: defendant's mother's property. See *Kasser v. Kasser*, 2006 VT 2, ¶ 17, 179 Vt. 259, 895 A.2d 134 (nonmarital property is not subject to equitable distribution under 15 V.S.A. § 751). Under 15 V.S.A. § 751(b), the court should instead consider "the value of all property interests

---

[2] The record does not indicate whether the couple and defendant's mother are joint tenants or tenants in common. Generally, absent evidence to the contrary, co-owners of property are presumed to be tenants in common. See 27 V.S.A. § 2(a) ("Conveyances . . . made to two or more persons[] shall be construed to create estates in common and not in joint tenancy, unless it is expressed therein that the grantees or devisees shall take the lands jointly or as joint tenants or in joint tenancy or to them and the survivors of them."); *Kipp v. Chips Estate*, 169 Vt. 102, 106, 732 A.2d 127, 130 (1999) (noting that "estate in common is preferred to joint tenancy" (quotation omitted)). This presumption can be rebutted if the tenants establish the elements of a joint tenancy. See *Kipp*, 169 Vt. at 108, 732 A.2d at 131. The analysis set forth herein is the same, however, regardless of whether the couple and defendant's mother are tenants in common or joint tenants.

[3] The family court acknowledged this in its order, noting that "[d]efendant's mother is not liable for the mortgage."

[4] Plaintiff conceded at trial that "the mortgage was [hers] and [defendant's] fully."

[and] liabilities . . . of *each party*" to the dissolution action. (Emphasis added.)

¶ 16. When the couple's debt is properly accounted for, it becomes apparent that they have no equity in the house. The interest of plaintiff and defendant in the house is worth roughly $150,000. Their outstanding debt secured by the mortgage on the house ·is approximately $195,000. Because their debt exceeds the value of their interest, the family court's finding that they had $52,500 in equity was clearly erroneous. The error in this finding is not harmless because this "equity" was found to be the parties' largest asset, and it was awarded to defendant along with the obligation to pay the parties' debt to her mother. As noted below, it was also the basis for the decision not to award maintenance. Thus, we must vacate the court's property distribution.

■ ¶ 17. Defendant additionally contends that the family court abused its discretion in failing to award spousal maintenance. The family court has broad discretion in determining whether to award maintenance, and if so, in determining the amount. *Stickney v. Stickney*, 170 Vt. 547, 548-49, 742 A.2d 1228, 1231 (1999) (mem.). We will uphold the court's order unless "there is no reasonable basis to support it." *Id.* at 549, 742 A.2d at 1231. A court may award maintenance to a spouse if it finds that the spouse lacks sufficient income or property to "provide for his or her reasonable needs" and is unable to sustain "the standard of living established during the marriage." 15 V.S.A. § 752(a)(1), (2). In fashioning such an award, the court should "consider[] all relevant factors," including "the property apportioned to the party." *Id.* § 752(b)(1).

■ ¶ 18. In this case, the family court plainly relied on its property allocation in declining to award spousal maintenance to defendant, noting that she "has received a favorable apportionment of the assets of the marriage." In view of our determination that the family court erred in apportioning the couple's property, we vacate and remand the family court's maintenance award as well. See *Schwartz v. Seldin-Schwartz*, 165 Vt. 499, 504, 685 A.2d 665, 668 (1996) (vacating maintenance award after vacating property distribution); *Osborn v. Osborn*, 147 Vt. 432, 435, 519 A.2d 1161, 1163-64 (1986) ("Because the property settlement in this case is vacated and remanded, the maintenance award must also be vacated to allow the family court on remand to determine whether the change in the property settlement, if any, requires a revision of the maintenance award.").

¶ 19. We now turn to the family court's decision regarding parental rights and responsibilities. The family court issued two orders regarding child custody and parent-child contact, both of which defendant appeals. In the initial order, the court awarded plaintiff sole physical and legal parental rights over the two minor children and more than fifty percent of parent-child contact. In the second order, the court summarily denied the parties' post-judgment stipulation, in which they agreed to split parent-child contact evenly. We address each of the orders separately, starting with the court's initial custody and parent-child contact order.

¶ 20. The family court has broad discretion in awarding custody. *Kasper v. Kasper*, 2007 VT 2, ¶ 5, 181 Vt. 562, 917 A.2d 463 (mem.). We will uphold the family court's findings of fact unless they are clearly erroneous, *id.*, and will not disturb the court's custody award if it reflects "reasoned judgment in light of the record evidence," *Porcaro v. Drop*, 175 Vt. 13, 18, 816 A.2d 1280, 1285 (2002).

¶ 21. Title 15, section 665 of the Vermont statutes sets forth the criteria for allocating parental rights and responsibilities, which include child custody and parent-child contact. The statute provides that when parents cannot reach an agreement on how to divide parental rights and responsibilities, the family court should award such rights and responsibilities "primarily or solely to one parent." *Id.* § 665(a). In making its determination, the court "shall be guided by the best interests of the child[ren]" and shall consider various factors enumerated in the statute. *Id.* § 665(b).

¶ 22. Defendant first contends that the family court abused its discretion in awarding sole physical and legal rights and respon-sibilities to plaintiff and less than fifty percent of parent-child contact to defendant. Specifically, defendant asserts that the court failed to: (1) properly consider plaintiff's concession that fifty/fifty sharing of parental contact was appropriate; and (2) recognize defendant as the primary caregiver when the parties lived to-gether. She further argues that the court relied upon impermis-sible factors and demonstrated bias against defendant. After reviewing the record, we find that the family court did not abuse its discretion in making the custody award.

¶ 23. The family court's decision is based primarily on its findings that defendant remains very angry with plaintiff and refuses to communicate with plaintiff even when the interests of

the children are involved, and that defendant's attitude and behavior adversely affect the children. The court found that plaintiff was pressured to give in to defendant's way of parenting, and that when the parties did speak to each other, plaintiff capitulated to defendant's demands to avoid an argument in front of the children. The court also found that plaintiff wanted to share parental rights, but defendant insisted on sole parental rights. It found that defendant "seems to be in competition with the Plaintiff in winning over the children's affection," citing incidents that supported this view.

¶ 24. As noted above, the family court's parental rights and responsibilities and parent-child contact decisions must serve the best interests of the children, after consideration of the factors set forth in the governing statute. *Id.*; see also *Harris v. Harris*, 149 Vt. 410, 413-14, 546 A.2d 208, 211 (1988) (explaining that specific findings for each factor are unnecessary and that it is sufficient if findings as a whole indicate that court considered all relevant factors). The court here based its decision upon the best interests of the children and evaluated the statutory factors. It concluded that "both parties have a strong, loving relationship with the children and can provide for their physical needs, emotional needs, and developmental needs." It also concluded, however, that defendant perceived plaintiff as an adversary and not as "a loving, capable parent whose presence in the children's lives is necessary for their continued happiness and welfare." The court awarded parental rights to plaintiff because she "is most sensitive to the children's needs and because she is more than willing to encourage the children's contact with the Defendant." It limited defendant's parent-child contact because of her "animosity towards the plaintiff, lack of communication with the plaintiff about the children and her propensity to act in a controlling manner."

¶ 25. Though the court did not cite to the statutory factors, its decision indicates that it relied primarily on two factors, as well as a legislative policy statement. The statutory factors are "the ability and disposition of each parent to foster a positive relationship and frequent and continuing contact with the other parent," 15 V.S.A. § 665(b)(5), and "the ability and disposition of the parents to communicate, cooperate with each other and make joint decisions concerning the children where parental rights and responsibilities are to be shared or divided," *id.* § 665(b)(8).

The court also relied upon the legislative policy that "it is in the best interests of [the parents'] minor child[ren] to have the opportunity for maximum continuing physical and emotional contact with both parents." *Id.* § 650. These factors have been central to many of this Court's decisions on parental rights and responsibilities and parent-child contact. See, e.g., *Habecker v. Giard,* 2003 VT 18, ¶ 12, 175 Vt. 489, 820 A.2d 215 (mem.); *Gazo v. Gazo,* 166 Vt. 434, 443, 697 A.2d 342, 347 (1997) (Legislature has given courts the flexibility to keep both parents involved in decisions affecting children even in the absence of joint custody). We have emphasized that "a supportive and close relationship with the noncustodial parent is in the best interest of the child," *Price v. Price,* 149 Vt. 118, 124, 541 A.2d 79, 83 (1987); see also *Renaud v. Renaud,* 168 Vt. 306, 309, 721 A.2d 463, 466 (1998). And we have described the factor in § 665(b)(5) as a "critical statutory factor," *Begins v. Begins,* 168 Vt. 298, 301, 721 A.2d 469, 471 (1998). The family court clearly acted within its discretion in relying on these factors to support its parental rights and responsibilities order.

¶ 26. Defendant argues, however, that another statutory factor — weighing the "quality of the child's relationship with the primary care provider," 15 V.S.A. § 665(b)(6) — is of controlling significance and requires that she prevail because she was the primary care provider of the children while the parties were together. Thus, she seeks the result that occurred in *Cabot v. Cabot,* 166 Vt. 485, 491-92, 697 A.2d 644, 648-49 (1997), where we upheld the custody award to the parent who was the primary caregiver despite the fact that she sought to exclude the other parent from the life of the child. The short answer to defendant's argument is that the family court did not conclude that defendant was the primary caregiver. Though the court acknowledged that defendant usually cooked for the children and bought their clothes, it found that *both* parents were very involved in the children's lives, shared the bedtime rituals, and took the children to their medical appointments. In addition, the court noted that while defendant cared for the children at night, plaintiff cared for them in the morning. These findings are supported by the record and, as such, will be upheld. Thus, we conclude that the family court properly considered defendant's role as caregiver, as required by § 665(b)(6).

¶ 27. Defendant also asserts that the family court abused its discretion in making its parent-child contact award by relying

on factors that are unrelated to both the governing statute and the best interests of the children. See *Hansen v. Hansen*, 151 Vt. 506, 508-09, 562 A.2d 1051, 1053-54 (1989) (stating that if "court's determination [is] unrelated to . . . the best interests of the children, it must fail"). As we emphasized in *Cloutier v. Blowers*, 172 Vt. 450, 455, 783 A.2d 961, 965 (2001), the family court must focus on the best interest of the child, not the best interest of one or more of the parents. Specifically, defendant argues that the court violated this policy because it based its decision on defendant's animosity towards plaintiff, defendant's lack of communication with plaintiff about the children, and defendant's propensity to act in a controlling manner. We disagree.

¶ 28. Though the family court relied upon those facts, it did so only to weigh the parties' conduct in relation to the statutory factors and whether that conduct adversely or positively affected the interests of the children. The court specifically found that defendant's negative attitude to plaintiff "adversely affects the children" and causes them "unnecessary stress." It further found that "Defendant harbors so much resentment against the Plaintiff that she can't communicate with her or cooperate with her, even if in the children's best interest." These findings are supported by the evidence, and in turn, support the court's parental rights and responsibilities decision. We find no abuse of discretion.

¶ 29. Defendant next contends that the court erred in awarding her only twenty-one percent of the parent-child contact, when even plaintiff agreed that parent-child contact be shared fifty/fifty. Defendant points to plaintiff's statements, made before and during trial, that the best interests of the children would be served by equal parent-child contact and her request that the court divide parent-child contact accordingly. We stress that despite plaintiff's testimony and request, there was no agreement on parent-child contact before or during trial. Such an agreement would "be presumed to be in the best interests of the child." 15 V.S.A. § 666(a); *Damone v. Damone*, 172 Vt. 504, 511, 782 A.2d 1208, 1214 (2001) (noting that agreement on parental rights and responsibilities "will not be lightly overturned by the court"). Even if there were such an agreement, however, the court would not be bound by it. Rather, the court must always make its own independent determination regarding what is in the best interests of the children. See 15 V.S.A. § 666(c) ("If the court finds that an

agreement between the parents is not in the best interests of the child or if the court finds that an agreement was not reached voluntarily the court shall refuse to approve the agreement."). Plaintiff's statements are merely part of a record that is replete with other evidence that the court could and did consider in determining the best interests of the children. In view of the evidence and the broad discretion afforded to the family court, we cannot conclude that the court abused its discretion in reaching a decision on parent-child contact different from that recommended by either of the parties.

█ ¶ 30. Finally with respect to the initial parental rights and responsibilities decision, defendant contends that the decision was erroneous because the family court judge was biased against her. She bases her allegation on two findings of the family court: that defendant purchased a dog and cat as a "bribe to cause the children to want to be at her home rather than at the Plaintiff's home," and that at defendant's insistence, the parties communicate only through email or a notebook. She argues that these findings are not supported by the evidence and therefore show judicial bias. Initially, we stress that adverse rulings, even if wrong, do not alone show judicial bias. See *In re Margaret Susan P.*, 169 Vt. 252, 257, 733 A.2d 38, 43 (1999). If defendant believes that findings are erroneous and that conclusions based upon them are unsupported, defendant should have made that claim, rather than attack the motives of the trial judge.

█ ¶ 31. We also note that defendant failed to seek disqualification of the presiding judge in the family court, and, therefore, this issue has not been preserved for our review on appeal. See *In re B.L.*, 145 Vt. 586, 590, 494 A.2d 145, 147 (1985) (concluding litigant waived claim of bias of the judge by failing to preserve issue at trial). Our procedure provides for review of disqualification motions by the administrative judge, with review here only of the ruling of the administrative judge. See V.R.C.P. 40(e)(3); V.R.F.P. 4(a)(1) (providing that rules of civil procedure apply in divorce proceedings except as otherwise provided in the rule). In this case, there is no ruling to review.

¶ 32. We turn now to the second order on parental rights and responsibilities. The case was heard on December 5, 2008, and the court issued its dissolution decision and order on January 20, 2009. Defendant filed a notice of appeal on February 18, 2009. On

March 27, 2009, over sixty days after the decision and order of the court, the parties filed a stipulation to amend the order of dissolution, containing four parts: (1) a new parent-child contact schedule giving defendant fifty percent of the parent-child contact; (2) an agreement that neither party would owe child support to the other; (3) a dismissal of the appeal from the dissolution order; and (4) an agreement on claiming the children as dependents. The stipulation was not accompanied by a motion,[5] but apparently was treated as a motion to modify the order with respect to the issues covered in it.[6] The court rejected the stipulation on April 9, 2009 saying only that the court "disagrees with expanded P.C. contact."

¶ 33. We are hampered by the very sparse record in the family court. The parties stated in the stipulation that they "agree to amend the terms of" the dissolution order, but never stated the grounds for the action. Further, although they were in sufficient agreement to file the stipulation, they disagree over the effect of the stipulation. Defendant seeks a new dissolution order based on the stipulation; plaintiff seeks affirmance of the family court's decision to reject the stipulation.

¶ 34. Defendant challenges both the procedure in issuing the order and its substance. We begin with the procedure. Under the circumstances, and recognizing that the stipulation was filed after the dissolution order became final, we treat the parties' filing as a joint motion to modify the dissolution order, governed by 15 V.S.A. § 668 and Vermont Rule for Family Proceedings 4(j). Under § 668, the court may grant a motion to modify an order "upon a showing of real, substantial and unanticipated change of circumstances" and a conclusion that modification "is in the best interests of the child." The procedure for such a motion is specified in Vermont Rule for Family Proceedings 4(j). The rule specifies that any proceedings for modification of a divorce order "shall be on motion, supported by an affidavit." *Id.* 4(j)(2). Affidavits filed pursuant to the section "shall set forth specific facts sufficient to warrant the required findings and shall be upon the affiant's own knowledge, information, or belief." *Id.* 4(j)(3). The parties did not comply with the rule. They filed neither an affidavit nor a motion. As defendant argues with respect to the

---

[5] The docket entries call the stipulation a motion to modify, but we can find no motion in the court file.

[6] There was a separate order covering child support.

substantive ruling, she apparently believed that the filing of the stipulation would trigger an automatic, nondiscretionary amendment to the court's dissolution order, an action inconsistent with 15 V.S.A. § 668 absent proper findings.

¶ 35. The court was presented with unusual circumstances. Only two months before the stipulation was filed, it had ruled that a fifty/fifty division of parent-child contact was not in the best interests of the children despite plaintiff's endorsement at trial of that schedule. Moreover, the stipulation represented a settlement under which each of the parties gained something important — plaintiff, an end to the litigation, and defendant, the parent-child contact she desired. Given the history of poor communication and interaction between the parties, it was critical for the court to determine that the stipulation was a fair settlement between the parties and a result that was in the best interests of the children. The information and evidence the parties were required to present under Rule 4(j) was exactly what the court needed to make a ruling under 15 V.S.A. § 668.[7]

¶ 36. The applicable procedural rule provides that "[i]n any case, the court may decline to hear oral argument and may dispose of the motion without argument." V.R.C.P. 78(b)(2). Given the parties' noncompliance with Rule 4(j), the court properly denied the motion summarily. See Callahan v. Callahan, 2008 VT 94, ¶ 12, 184 Vt. 602, 958 A.2d 673 (mem.) (upholding trial court's summary denial of motion when petitioner had failed to show any legal grounds in support of motion).

¶ 37. Defendant argues that our decisions require the court to hold a hearing before refusing to enforce a stipulation. These cases apply, however, only if the stipulation is provided to the court before the court renders its decision. See Plante v. Plante, 148 Vt. 234, 236, 531 A.2d 926, 927 (1987) (holding that the trial court "must give notice to the parties of its rejection of an agreement so that they may make a meaningful evidentiary presentation on this issue"). In that circumstance, the court could reject the stipulation only "if it gave notice of its intention to the

---

[7] Defendant apparently understands the need for evidence favorable to her position because she states in her brief that she was still adjusting emotionally when the trial was held but her animosity and lack of communication "had ameliorated substantially." Defendant needed to provide evidence of this change to the family court, not to this Court.

parties and gave them an opportunity to present evidence on the issues covered in the settlement." *Harris*, 149 Vt. at 420, 546 A.2d at 215 (noting that "the *Plante* rule should apply whether or not the stipulation is filed before the hearing on the merits *as long as it precedes the decision*" (emphasis added)). Here, however, the parties submitted their stipulation after the hearing and after the final judgment. The parties presented their arguments at trial, and the family court considered the relevant information in the context of the best interests of the children, after which it issued an order. Because the post-judgment stipulation contained no evidence of changed circumstances, the court had no need to hold yet another hearing or elaborate on the grounds of its decisions.

¶ 38. Defendant also argues that the court could not reject the stipulation without evidence. As stated above, it was the parties' burden to present evidence to support the stipulation, and they failed to do so. The only evidence before the court was that from the trial, and the court had already ruled on the basis of that evidence that a fifty/fifty split of parent-child contact was not in the best interests of the children.

¶ 39. Similarly, defendant argues that the court was obligated to make findings and explain its decision. Again, our answer is that the court could not do what defendant demands because the parties failed to present evidence in support of their stipulation. Under the circumstances, the court's decision fully explained its rationale.

¶ 40. We turn to defendant's substantive challenge to the court's decision. For a number of reasons, defendant argues that the court was required to amend the dissolution order as provided in the stipulation. She argues that the court's decision denied her constitutional right to parent-child contact provided for in the stipulation. In support of this argument, defendant relies upon our decision in *Glidden v. Conley*, 2003 VT 12, ¶ 21, 175 Vt. 111, 820 A.2d 197, where we held that due process requires that a custodial parent's decision with respect to visitation be given a presumption of validity. She also argues that the stipulation represents a consent judgment that the court was required to enter.

¶ 41. As we stated above, the major problem with defendant's position is her failure to comply with Vermont Rule for Family Proceedings 4(j) to provide any evidence in support of the

stipulation and a motion to state her position. Thus, none of the arguments she makes to challenge the substance of the family court's decision were made to the family court either with the stipulation or in response to the court's decision. We will not consider arguments made for the first time on appeal. See *Follo v. Florindo*, 2009 VT 11, ¶¶ 14-15, 185 Vt. 390, 970 A.2d 1230.

¶ 42. As we stated above, the court acted pursuant to 15 V.S.A. § 668, and could modify the dissolution decision only if it found there were changed circumstances and the modification was in the best interests of the children. Similarly, under 15 V.S.A. § 666(c), it was required to reject the stipulation if it found it was "not in the best interests of the child." Having nothing new before it on which to base a "best interests" determination, the court denied modification and maintained the decision it had reached only two months earlier.

¶ 43. The family court has broad discretion with regard to the modification of parent-child contact awards, and we will uphold its decision "unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." *Gates v. Gates*, 168 Vt. 64, 74, 716 A.2d 794, 801 (1998) (quotation omitted). As noted, the court has broad discretion in determining what serves the best interests of the children. *Spaulding v. Butler*, 172 Vt. 467, 475, 782 A.2d 1167, 1174 (2001). We find no abuse of that discretion here.

¶ 44. Finally, defendant challenges the court's decision to wholly reject the stipulation without addressing the provisions other than the agreement on parent-child contact. It was apparent that the provisions were interrelated so that the other provisions depended entirely on the acceptance of the parent-child contact provision. The court did not need to separately address those provisions.

*The family court's property division and maintenance awards are vacated and remanded for further proceedings consistent with this opinion. The family court's decisions on parental rights and responsibilities are affirmed.*