ROBINSON, J., concurring in part and dissenting in part.
¶ 31. These cases are hard. Termination of parental rights may sever an established parent-child relationship that is both constitutionally protected and potentially vitally important to child and parent alike. But the failure to terminate when the evidence warrants it risks extending a period of uncertainty, with potential adverse impacts on the very children the laws seek to protect. I believe the best way to manage these difficulties is to rely on the system we have established-one in which a factfinder who can directly observe the witnesses and review the evidence in that context determines the facts and exercises the difficult discretionary judgments, and an appellate court ensures that the factual findings are in fact supported by evidence in the written record and the difficult judgment as to the ultimate question falls within the trial court's broad discretion, subject to clear standards on review. I believe the *487 majority, however well intentioned, has departed from this framework by filling in the gaps it perceives in the trial court's factfinding with appellate factfindings of its own. For that reason, I respectfully dissent from the majority's ruling reversing the trial court's denial of the termination petition as to father.[4]
¶ 32. The logic of the majority's decision here requires a two-step analysis: first, that the trial court's findings in connection with its rejection of the State's termination-of-parental-rights (TPR) petition with respect to father were inadequate to support its conclusion because the trial court failed to evaluate father's failure to seek contact with N.L., ante, ¶¶ 20, 24; and second, that the proper remedy is not to remand for the trial court to make appropriate findings but, rather, is to find that the evidence in this case, as a matter of law, compels the conclusion that termination is in N.L.'s best interests, ante, ¶ 29. I have serious qualms about the first step of the analysis, but view the second as a radical overstep of this Court's authority and role, especially given the high burden the State faces in terminating parental rights at initial disposition.
I. Adequacy of the Trial Court's Findings
¶ 33. With respect to the first step of the majority's analysis-its conclusion that the trial court's findings were inadequate with respect to father's reasons for seeking contact with N.L.-the majority improperly rejects as irrelevant the findings the trial court did make concerning father's lack of contact. In particular, the majority acknowledges that the trial court attributed father's lack of contact with N.L. "primarily to administrative hurdles," ante, ¶ 27, but concludes that the extent of the efforts of the Department for Children and Families (DCF) to provide services is irrelevant to the best-interests analysis. In other words, the trial court's findings as to the reasons for father's lack of contact with N.L. during the pendency of this case were inadequate because the trial court erroneously assigned weight to the administrative hurdles that the trial court concluded contributed to father's lack of contact.
¶ 34. I have serious qualms about this analysis because I believe it amounts to a reweighing of the evidence. The context of the trial court's discussion of the impediments to father's contact with N.L. is important. The court considered the reasons for father's lack of contact with N.L. in the course of its best-interests analysis. I reproduce the court's findings concerning the likelihood of father resuming parental duties for N.L. and whether he plays a constructive role in N.L.'s life in their entirety because the context and full analysis underlying the court's conclusions on these points are highly relevant:
Father also appears to be in no position currently to assume parental duties for N.L. However, Father has faced administrative hurdles to even having the opportunity to visit with N.L. that have been exacerbated by his lack of stable residence or contact information, and lack of transportation resources. Mother indicated that Father has cared for N.L. as recently as August 2017, though never as her primary caregiver. Both DCF and the Court lack information as to Father's current ability to parent N.L.
....
Father has also not had contact with N.L. in over six months, either physical or via phone or other form of communication, based on the evidence presented to the Court. Thus, it does not appear that he continues to play a constructive *488 role, including personal contact and demonstrated emotional support and affection, in N.L.'s welfare. However, the evidence suggests that Father's lack of contact is due at least in part to DCF's requirement that he pass a substance abuse assessment prior to his having any contact with N.L., and the complications that have arisen that have kept him from overcoming this administrative hurdle. Given the fundamental nature of the rights at stake, the Court is loathe to terminate Father's parental rights at initial disposition without having even offered him the opportunity to establish regular contact with N.L. and demonstrate his present ability to assume parental duties for her and that he can play a constructive role in her life. Though certainly N.L. needs stability and is a young child, she has been in custody as of the date of the hearing less than a year. The court will allow Father three to six months to demonstrate his willingness and ability to assume parental duties in caring for his child.
¶ 35. The trial court's analysis as a whole is well-considered and cognizant of the applicable standards. This is not a case in which a parent is challenging termination on the basis that DCF's services were inadequate. Rather, in considering whether there is a reasonable probability that father could resume parenting duties, the trial court acknowledged that (1) some evidence reflects that father exercised parenting duties relatively recently, (2) it did not have information as to father's current ability to parent N.L., and (3) father had faced administrative hurdles in even having the opportunity to visit with N.L.[5] The trial court's assessment as to whether father would be able to resume parental duties in a reasonable time and as to whether he plays a constructive role in N.L.'s life were both based in part on the fact that the trial court was not persuaded that the lack of contact fully reflected father's parenting abilities or commitment, or the quality of his relationship with N.L. The trial court concluded that a short increment of additional time would give father the opportunity to act, or not, before the court took the drastic step of terminating father's parental rights.
¶ 36. Whether I would have weighed the evidence the same way, or analyzed N.L.'s best interests the same way, is beside the point; I have a hard time concluding that the trial court's line of reasoning exceeds its broad discretion. See In re S.B., 174 Vt. 427, 429, 800 A.2d 476, 479 (2002) (mem.) (explaining that our role "is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion"). Nevertheless, if the majority concluded that the proper remedy for an order not sufficiently supported by the findings was a remand to allow the trial court to make additional findings, I would, with qualms, likely join. See, e.g., *489 Parker v. Parker, 2012 VT 20, ¶¶ 13, 19, 191 Vt. 222, 45 A.3d 48 (remanding for further findings where trial court's findings and conclusions were "not sufficient for us to understand the basis of its decision and to engage in informed appellate review"). But I cannot join in the majority's extraordinary act of itself evaluating the evidence and making the critical findings that the trial court concluded that it could not make-including that father cannot resume parental duties in a reasonable time-especially given that the facts of this case are not particularly extraordinary.
II. The Majority's Extraordinary Remedy of Terminating Father's Rights on Appeal
¶ 37. Because the decision to terminate a parent's rights implicates the constitutional rights of both parent and child, the State must clear a high evidentiary bar to support termination. By concluding that the evidence in this case compels particular findings as a matter of law, and that the evidence (whether or not actually credited by the trial court and reflected in its findings) compels a particular conclusion as a matter of law, the majority not only tests these principles, but it departs from our assigned role as a court of appellate review. If this truly were an extraordinary case, I might be tempted to join the majority. But the facts of this case, as reflected in the trial court's findings, are depressingly common; nothing in this case warrants the highly unusual approach the majority has brought to this case, or provides a principled limitation on the Court's future assertion of such extraordinary authority.
¶ 38. This Court has recognized that the State's authority to interfere with the parent-child relationship in the name of protecting children is "awesome," and is accordingly subject to rigorous statutory restraints. In re N.H., 135 Vt. 230, 235-37, 373 A.2d 851, 855-57 (1977). Moreover, the U.S. Supreme Court has recognized that under the Constitution, a state may not terminate a parent's rights without proving unfitness by clear and convincing evidence. Santosky v. Kramer, 455 U.S. 745, 755-56, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). We have held that Vermont's statutory "best-interests" criteria, 33 V.S.A. § 5114(a), embody Vermont's standards for determining parental unfitness. In re D.C., 2012 VT 108, ¶ 22, 193 Vt. 101, 71 A.3d 1191. The requirement that the State prove, and the (trial) court find, that termination is in the child's best interests by clear and convincing evidence satisfies not only a statutory requirement, but also a constitutional imperative.
¶ 39. When the State seeks to terminate a parent's rights at initial disposition, without first implementing a plan to attempt to enable a parent and child to reunify, these concerns may be particularly acute. See In re B.M., 165 Vt. 194, 199, 679 A.2d 891, 895 (1996) (reaffirming that "termination at initial disposition should be rare because it bars all hope of family reunion" (quotation omitted) ); see also In re J.T., 166 Vt. 173, 177, 693 A.2d 283, 285 (1997) (termination after prior disposition order and approved case plan is preferred to termination at initial disposition).[6] Because of the substantial and permanent consequences of a termination of parental rights, with profound implications for the constitutional rights and most intimate personal experiences of both parent and child, as a court of appellate review, we must ensure that trial-court decisions terminating parental *490 rights are supported by clear and convincing evidence. Given the constitutional significance of the termination decision, for this Court to conclude that evidence not only permits a trial court to conclude by clear and convincing evidence that termination is in a child's best interests but actually compels such a conclusion requires particularly incontrovertible evidence of parental unfitness from which no reasonable factfinder could reach any conclusion other than that termination is compelled by clear and convincing evidence.
¶ 40. That's because the role of this Court is to correct legal errors. "When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence. We leave it to the sound discretion of the family court to determine the credibility of the witnesses and to weigh the evidence." In re A.F., 160 Vt. 175, 178, 624 A.2d 867, 869 (1993) (citations omitted). The trial court has broad discretion in evaluating the best-interests criteria and deciding whether to grant a petition to terminate a parent's parental rights. In re D.M., 2004 VT 41, ¶ 5, 176 Vt. 639, 852 A.2d 588 (mem.). In entering a judgment of termination on appeal, the majority has usurped the role of the trial court in: (1) making findings based on the evidence; and (2) balancing its findings, and the various best-interests factors, to reach the ultimate conclusion as to whether termination is in N.L.'s best interests.
¶ 41. As to the first point, the majority has taken over the trial court's factfinding role, contradicting the trial court's factfinding based on the majority's own read of the evidence, and filling in gaps where the majority found them. The trial court found that father: (1) has served as a caretaker for N.L, though never as the primary caretaker; (2) has not had contact with N.L. since August 2017 (the TPR hearing was in May 2018) due in part to administrative difficulties and transportation challenges; (3) acknowledged difficulties with substance abuse in the past but denied any present issues; (4) acknowledged casual consumption of alcohol at present; (5) is employed; (6) does not have a driver's license; (7) was renting a room in a friend's home at the time of the disposition hearing but believed he could find his own housing within a month or two; and (8) was not present at the time of the incident underlying the CHINS petition. The trial court made no findings about father's pre-CHINS relationship with N.L., nor his parenting strengths or weaknesses. The court made no findings that father's circumstances or capabilities were incompatible with parenting. Instead, it expressly concluded that both DCF and the court lack information as to father's current parenting ability.
¶ 42. In justifying its decision to grant the petition to terminate father's rights on appeal, the majority essentially reviews the record itself and makes its own findings from the evidence, concluding that "[t]he record shows" that (1) father has never played a constructive role in N.L.'s life (a fact about which the trial court made no findings); (2) he made no effort to establish visits with N.L. for a critical period of several months after she was taken into state custody and was responsible for the lengthy delay in establishing any contact (an appellate finding that directly contradicts the trial court's own finding attributing the delay in part to administrative hurdles and transportation challenges); and (3) he would not be able to resume any parenting role within a reasonable period of time from N.L.'s perspective (a matter about which the trial court expressly concluded both DCF and the court lack information).Ante, ¶ 29. These appellate findings reflect a radical departure from our traditional role of leaving it to "the sound *491 discretion of the family court to determine the credibility of the witnesses and to weigh the evidence." A.F., 160 Vt. at 178, 624 A.2d at 869. I might affirm the majority's assessment if it had been rendered by a factfinder who observed the witnesses firsthand, but cannot join it when undertaken in the context of appellate review.[7]
¶ 43. Moreover, the actual weighing of the best-interests factors is a fundamentally discretionary act. Although the court's findings and conclusion must be supported by clear and convincing evidence, the weight the court affords to, for example, the quality of the child's relationship with a parent versus the parent's ability to resume parental duties, is at its core a discretionary decision. It's one thing to conclude that the trial court has exceeded its discretion in balancing the various factors; it's quite another for the majority to assert the discretionary prerogative itself, applying its own discretion to balance the various best-interests factors to reach its own independent determination of the child's best interests.
¶ 44. This is not the kind of extraordinary case in which the evidence is so incontrovertible and the facts so compelling that they amount to parental unfitness and grounds to terminate parental rights as a matter of law. As a consequence, I fear that the majority's analysis will have far-reaching consequences beyond this particular case.
¶ 45. The majority cites In re J.F., 2006 VT 45, ¶¶ 13, 17, 180 Vt. 583, 904 A.2d 1209 (mem.), for the proposition that this is "one of those rare cases in which we need not remand the matter to the family division to make the appropriate findings because the record, as described above, demonstrates by clear and convincing evidence that the statutory best-interests factors compel termination of father's parental rights." Ante, ¶ 29. This case is a far cry from J.F. There, the trial court's findings-which no party challenged-reflected a long history of the parents physically abusing and educationally and medically neglecting their children. The parents socially isolated the children. The children were underweight, and one was emaciated. The youngest children's toenails were green and so overgrown they had begun to curl under their feet. The seven- and five-year-old were not toilet-trained. While the children and parents were strongly bonded-and this was why the trial court denied termination-we noted that even this bond was harmful: "the evidence and findings in this case demonstrate that the bond between the parents and the children has fostered clannishness to an extreme and led directly to neglectful deficiencies in the children's health, education, and adaption to society in general." J.F., 2006 VT 45, ¶ 13, 180 Vt. 583, 904 A.2d 1209. In light of all this, we held "the evidence, as well as the court's findings and conclusions, overwhelmingly support the termination petition." Id.
¶ 46. Here, the majority relies upon father's failure to contact N.L. during the pendency of the case, and its view-contrary *492 to that of the trial court-that this failure rests squarely and solely on father's shoulders to support its termination order. Neither the trial court nor the majority purports to make any findings about abuse or neglect suffered by N.L. while in father's care, nor obstacles to father's safe and responsible parenting. It's hard to see what about these facts, or the evidence in this record, make this case so rare or extraordinary relative to the shocking cases of abuse and neglect that cross our docket every day. If this record compels any particular outcome as a matter of law (termination or nontermination), it's hard to see how the vast majority of the abuse and neglect cases we see don't likewise qualify for essentially nondeferential factual review by this Court. The majority has not explained why this case in particular warrants such extraordinary treatment, and has not provided any limiting principle to ensure that we don't take the same approach in virtually any discretionary decision with which the members of this Court seriously disagree. Any downside to prolonging this case by following the ordinary course of appellate review and remanding to the trial court to find facts and exercise discretion concerning N.L.'s best interests is far outweighed in my view by the perils of eroding the distinction between the role of a factfinder and our role as a court of appellate review.
¶ 47. The majority's approach is particularly perplexing given the transient nature of an order declining to terminate parental rights. Neither an outright affirmance nor a remand for further findings would doom N.L. to a prolonged purgatory awaiting permanency. If this Court remanded for further findings, the trial court could augment its findings relatively quickly. In doing so, it would either provide more support for its decision not to terminate father's rights-thereby giving this Court additional findings to review-or it would conclude based upon further analysis and more in-depth review that termination was in fact appropriate. This would not push permanency months down the track.
¶ 48. Meanwhile, whether we affirmed or remanded, the State would still be free to seek termination of father's parental rights if he was not, as expected by the trial court, ready to resume parental duties within six months of the court's order. That's because, unlike an order actually terminating parental rights, an order declining to terminate parental rights does not preclude the State or a party from renewing the motion; it may prolong the period of uncertainty for a child pending a final disposition, but it does not irrevocably terminate a parent-child relationship. The case plan approved by the trial court called for reunification within three to six months. That means proceedings in the trial court are ongoing. If father is not ready to resume parental duties by now, and immediate reunification with father is not in N.L.'s interests, a trial court can terminate father's parental rights-accomplishing the same outcome as the majority's decision in this case, but through the legal framework intended to apply to termination decisions. On the other hand, if a trial court concludes that reunification is, in fact, in N.L.'s best interests at this time, then it will be clear that a preemptive decision by this Court to terminate father's parental rights would have undermined significant statutory and constitutional imperatives. For these reasons, I respectfully dissent.

I join the majority's affirmance of the trial court's judgment of termination as to mother.

This last conclusion explains the distinction between father and mother that the majority asserts is lacking in the trial court's decision. Mother's lack of contact with N.L. followed a long period in which mother clearly had opportunities to maintain contact but had failed to do so, whereas father's lack of contact was brought about at least in part by a lack of opportunity and thus may not support the same inferences concerning father's ability to parent or commitment to parenting N.L. The majority acknowledges that the "administrative hurdles" distinguish the trial court's best-interests analysis as to mother and father, respectively, but implicitly dismisses this distinction as irrelevant. I do not deny that considerable evidence does call father's parenting ability and commitment to parenting N.L. into question, but the trial court's findings and conclusions as to mother and father, respectively, are not inconsistent as the majority suggests. Ante, ¶ 28.

The trial court recognized and relied on these constitutional considerations in concluding that N.L.'s best interests would be served by providing father additional time to comply with an approved case plan.

Whether the majority's assessment, had it been rendered by a trial court, is affirmable is actually somewhat questionable. The majority asserts broadly that father would not be able to resume parenting N.L. within a reasonable time, but offers no explanation to support its conclusory claim. Lee v. Ogilbee, 2018 VT 96, ¶¶ 24-25, --- Vt. ----, 198 A.3d 1277 (explaining trial court's application of law to findings must be adequate to explain how it arrived at decision; "conclusory" statements are inadequate). Given the absence of any findings that support the conclusion that father never played a constructive role in N.L.'s life-either by the trial court or the majority in its appellate factfinding role-I have doubts as to whether this unsubstantiated assertion would survive appellate review.