VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      22-AP-172

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2022

Brittany Huynh\* v. Nicholas Huynh

}   APPEALED FROM:
}   Superior Court, Rutland Unit,
}   Family Division
}   CASE NO. 151-6-20 Rddm
    Trial Judge: Nancy J. Waples

In the above-entitled cause, the Clerk will enter:

Mother appeals the family division's final divorce order awarding primary parental rights and responsibilities (PRR) of the parties' three children to her but granting parent-child contact (PCC) to father fifty percent of the time. We reverse and remand.

The family division made the following findings of fact and conclusions of law in its final order establishing PRR and PCC. The parties were married in 2018. Mother was previously married and that relationship ended in divorce. Mother has two children from her first marriage, born in 2015 and 2016. The biological father of mother's two oldest children never had a relationship with them and relinquished his parental rights. Father adopted them in April 2019. Mother and father had one child together, born in September 2019. Thus, mother and father were the legal parents of all three children, and they lived together in Mt. Holly, Vermont.

Mother was the sole care provider for the two older children before her marriage to father. She left her job to be a stay-at-home parent. She continued in the role of primary caregiver for the two older children after marrying father, and also cared for the youngest child as soon as he was born. Before and throughout the parties' marriage, father worked at General Electric. During the parties' marriage, he worked the second shift and often worked overtime, so on weekdays he began work at around 2:00 p.m. and frequently did not return home until 2:30 or 3:00 a.m.

In April 2020, the parties had a major argument and father informed mother he was not happy with their relationship. Shortly thereafter, father moved out of the marital home. He initially began living with his mother. However, father soon started a romantic relationship with one of his coworkers. In August 2020, he moved into her home in Reading, Vermont. At the

time of the final merits hearing, he continued to reside there and remained in a relationship with this coworker.

When father moved out of the marital home, mother was left as the sole care provider for the three children. She continued in that role and homeschooled the children until July 2021, when she started a new full-time job at Wright Construction. At the time of the final merits hearing, she was working as the company's project manager and marketing director at its office located minutes away from her home.

Even after resuming full-time work, mother remained primarily responsible for meeting the children's medical, social, and educational needs. At the time of trial, the two oldest children were attending elementary school in Mt. Holly, Vermont, while the youngest was attending daycare in Wallingford, Vermont. Father has not visited the children's schools or interacted with any staff or teachers. Mother gets the children ready for school and transports them every day. The children are involved in sports and other extracurricular activities, which mother manages.

Although father expressed his desire to take the children to school in the morning, the court found that this was logistically impossible based on his schedule. His home in Reading is forty-five minutes away from his job in Rutland. At the time of trial he was working the first shift, which starts at 6:30 a.m., requiring him to leave his house around 5:30 a.m. every day. But the older children cannot be dropped off at their school until 7:45 a.m. at the earliest, and the youngest child cannot be dropped off at his daycare until 7:30 a.m. Father's girlfriend works the same shift at General Electric. Father asserted that his girlfriend could adjust her schedule more easily and therefore could take the children to school at least on Monday mornings, but his girlfriend's testimony did not corroborate this statement. Father's girlfriend has never been to the children's school and is not acquainted with any aspect of their education. By contrast, mother lives approximately five minutes away from the children's elementary school and her work schedule allows her to bring them to school at the designated time every day.

Two of the children have medical issues that require regular appointments and medications. Mother has been primarily responsible for medical care, including taking children to appointments, obtaining prescriptions, and communicating with healthcare providers. Father attended some appointments before the parties separated, but none since separation. Father has had minimal contact with the children's healthcare providers.

Mother filed this divorce action in June 2020. The family division held four days of contested hearings from October 2020 through February 2021 regarding temporary PRR and PCC. It issued a temporary order granting mother legal and physical PRR, but awarding father contact every weekend from Friday evening until Sunday evening. The court's determination regarding PRR was based largely on its findings that mother had always been the primary caregiver for the children. Its PCC schedule was based in part on the same consideration, but also on the fact that mother was not then employed, so she could freely spend time with the children during the week when father was working. The court found it appropriate to allow contact with father on weekends, when he was not working and was fully available to the children. The parties continued this arrangement until the court issued its final order.

In its final order, the court similarly determined that awarding mother primary legal and physical PRR was in the children's best interests. In reaching this determination, the court considered the nine enumerated statutory factors. See 15 V.S.A. § 665(b). It concluded that three factors favored mother: "the ability and disposition of each parent to assure that the child

receives adequate food, clothing, medical care, other material needs, and a safe environment," id. § 665(b)(2); "the ability and disposition of each parent to meet the child's present and future developmental needs," id. § 665(b)(3); and "the quality of the child's relationship with the primary care provider, if appropriate given the child's age and development," id. § 665(b)(6). It concluded that the other factors favored neither parent or were inapplicable. The court also awarded fifty percent PCC to father and imposed a week-on-week-off schedule. The court provided no explanation for its conclusion regarding PCC.

Mother filed a Vermont Rule of Civil Procedure 59 motion to reconsider, arguing that the court's findings did not support awarding contact to father during weekdays, and that the court had effectively and improperly ordered the parties to share PRR against their wishes by imposing a week-on-week-off PCC schedule. Mother emphasized the court's findings that she had tended to all the children's needs during the school week, that father participated minimally if at all in weekday activities, and that neither father nor his girlfriend would be able to drop the children off at their schools in the mornings because of conflicting work schedules. Father submitted an opposition, including an affidavit in which he attested that he had adjusted his work schedule to be able to transport the children to their schools and that the children had adjusted well to the new schedule.

The court denied the motion. It stated that the goal of PCC is to maximize time with each parent except where there is a likelihood of harm, and that awarding equal contact to the noncustodial parent is consistent with applicable statutes and case law. The court specified that its PCC award was based on the following findings and analysis from its final order: "both [parents] are capable of continuing to provide the children with food, clothing, medical care, and a safe environment," "both parties provide the children with love, affection, and guidance," "both parties are engaged in the children's developmental needs," "the children have had the opportunity adjust to each parent's home," and "[t]he children will continue to go to the same schools and have the opportunity remain active in their community, whether they are with [mother] or [father]." The court noted that its conclusion regarding PCC was further supported by father's affidavit submitted in opposition to mother's motion to reconsider.

On appeal, mother argues that the 50/50 PCC schedule was inconsistent with the family division's findings of fact and an abuse of discretion. She contends further that the court's legal analysis was inadequate to explain how it arrived at its decision regarding PCC. Finally, mother argues that the trial court committed clear error by relying on father's affidavit in denying her motion to reconsider.

"We review the trial court's determination regarding the parent-child contact plan [and] parental rights and responsibilities . . . for abuse of discretion." Lee v. Ogilbee, 2018 VT 96, ¶ 9, 208 Vt. 400. The family division has broad discretion in these determinations, but its decision "must serve the best interests of the children, after consideration of the factors set forth in the governing statute." DeLeonardis v. Page, 2010 VT 52, ¶ 24, 188 Vt. 94. "[T]he court's application of the law to the findings must be adequate to explain how the court arrived at its decision. Remand is necessary where this Court cannot fully discern the basis for the trial court's decision from the findings." Lee, 2018 VT 96, ¶ 25. So long as we can understand how the family division reached its decision regarding PCC, we will uphold that decision unless the court's "discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Cleverly, 151 Vt. at 355-56 (quotation omitted).

3

Despite the broad discretion afforded to the trial court in determining the children's best interests and fashioning a PCC schedule, we cannot square the court's award of fifty percent contact to father with its findings of fact, which are almost completely in mother's favor and do not demonstrate that father can adequately care for the children during weekdays. The court's final order provided no explicit justification whatsoever for the PCC award and the basis for it is not obvious from the court's findings or legal analysis. See Nickerson v. Nickerson, 158 Vt. 85, 89 (1992) ("When the relevant legal criteria . . . set out in 15 V.S.A. § 665(b)[ ] are applied to the facts, it is important for the appellate court to know how the trial court weighed the facts and blended the standards to arrive at the conclusion."). Although the court's reconsideration order purported to identify findings that "support generous contact" with father, these "findings" were actually conclusions of law taken from the legal analysis section of the court's final order. For example, the court reiterated statements from its final order that "both [parents] are capable of continuing to provide the children with food, clothing, medical care, and a safe environment" and "both parties provide the children with love, affection, and guidance," tracking the language from the corresponding statutory factors. See 15 V.S.A. § 665(b)(1) (court must consider "the relationship of the child with each parent and the ability and disposition of each parent to provide the child with love, affection, and guidance"); id. § 665(b)(2) (court must consider "the ability and disposition of each parent to assure that the child receives adequate food, clothing, medical care, other material needs, and a safe environment"). These legal conclusions cannot stand unless supported by factual findings, and without such findings, they cannot serve as the foundation for the court's ultimate conclusion regarding what PCC schedule is in the children's best interests.

With one small exception, there were no findings in the record to suggest that, before this action was commenced and the court imposed the temporary order giving father PCC on weekends, father ever cared for the children apart from mother or that he ever independently provided for the children's food, clothing, medical care, or other basic daily needs. The one exception was a period of less than forty-eight hours where mother was in the hospital and father was in charge of the children, but he had multiple phone calls with mother during that time to discuss how to care for the children, and father's own mother came to the home to assist with caretaking. Although father had contact with the children on weekends during this litigation, the court made no findings about father's interaction with the children during those visits. Thus, although we can infer that father spent time with the children apart from mother on weekends in the months leading up to the final merits hearing, the record provides no basis for us to infer the quality or circumstances of his caretaking, his ability to respond as needed to educational or medical issues involving the children, and whether expanding his visitation to include regular weekday contact, as the court did, could be in the children's best interests.

Virtually all of the court's findings regarding father demonstrated that he was minimally or not at all involved in the children's care even though he had the opportunity to be more engaged. For instance, it noted that father claimed he could not get medical information about the children because mother "bars him from doing so," but it found that he received medical bills for the children's care which clearly provide contact information for their medical providers and that the temporary PRR order granted him equal rights with mother to consult with any medical, dental, or psychological care provider. Thus, father could have contacted the children's providers directly and engaged with their medical care but chose not to.

The court's findings suggesting that it was logistically impossible for father or his girlfriend to transport the children to their schools on weekday mornings is in tension with the

4

PCC order. Nothing in the court's decision explained how the children would get to school or otherwise have safe and proper care during weeks when they were staying at father's home. Although father addressed this obstacle in the affidavit he submitted in opposition to mother's motion for reconsideration—claiming that he had adjusted his work schedule to be able to bring the children to school on time—the court improperly accepted and relied on this affidavit after the evidence was closed and where no party had sought to reopen the judgment based on newly discovered evidence. See In re B.K., 2017 VT 105, ¶ 13, 206 Vt. 110 ("While the trial court has broad power under Rule 59(e) to reconsider issues previously presented, the rule does not contemplate reopening the evidence or creating a new record."). Thus, there existed no record evidence and no proper findings to support even father's logistical ability to meet the children's daily needs during weekdays, separate and apart from the question of whether he had adequate knowledge or skills to care for them.

The friction between the court's negative findings about father and its award of fifty percent PCC to him is further complicated by the court's finding that the parties' relationship has been contentious since separation and that they have had difficulty communicating with one another regarding the care of their children. The court's order, which awarded primary legal and physical PRR to mother but imposed a week-on-week-off PCC schedule, would require the parties to communicate frequently and effectively. The court never reconciled its finding about the parties' poor communication with the practical implications of the PCC schedule it imposed.

Where supported by appropriate findings of fact, it is within the trial court's discretion and consistent with applicable law to award fifty percent PCC to the noncustodial parent. E.g., Chase v. Bowen, 2008 VT 12, ¶ 42, 183 Vt. 187. In this case, however, we "cannot fully discern the basis" for the court's PCC award from its findings or legal analysis. Lee, 2018 VT 96, ¶ 25. Although the court made some positive legal conclusions about father in its discussion of the statutory factors, these conclusions stand in stark contrast to the court's factual findings. Accordingly, we must reverse its order and remand for the court to make additional findings, clarify its order, or take other appropriate action consistent with this decision.

Reversed and remanded.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

Karen R. Carroll, Associate Justice

William D. Cohen, Associate Justice

5